# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3518-18T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
A.Z., SVP-688-14.

_____

Submitted February 12, 2020 – Decided March 10, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-688-14.

Joseph E. Krakora, Public Defender, attorney for appellant (Allison C. Broad, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, Deputy Attorney General, on the brief).

PER CURIAM

A.Z., who is fifty-one years old, appeals from the April 8, 2019 order continuing his civil commitment to the Special Treatment Unit (STU), the secure facility designated for the custody, care, and treatment of sexually violent

predators committed pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to - 27.38.  We affirm.

An involuntary civil commitment may follow service of a sentence for "a sexually violent offense," including sexual assault, when the offender "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment."  N.J.S.A. 30:4-27.26; see also N.J.S.A. 30:4-27.25. Annual review hearings to determine whether the person remains in need of commitment, despite treatment, are required.  N.J.S.A. 30:4-27.35.

Following his incarceration for second-degree sexual assault by force or coercion against an eighteen-year-old young woman, N.J.S.A. 2C:14-2(c)(1), A.Z. was civilly committed to the STU pursuant to the SVPA.  A.Z.'s commitment was continued at his first annual review hearing, which is the subject of this appeal.  He has six prior disorderly persons and five prior indictable convictions, including a 1994 conviction for first-degree aggravated sexual assault of a twelve-year-old girl, N.J.S.A. 2C:14-2(a)(1).

At the review hearing, the State presented the testimony of psychiatrist Dean DeCrisce, M.D., who examined A.Z. and found that he demonstrates a "persistent ingrained pattern of offending" that creates a high risk of

reoffending.  Dr. DeCrisce thoroughly outlined A.Z.'s known behavior before and after institutionalization and explained how he arrived at his expert conclusion.  A.Z. scored a five on the Static-99R test,[1] meaning that "compared to other sex offenders, his risk is higher than the average sex offender."  He scored a twelve out of twenty-six on the Stable-2007 test,[2] which puts him in the "high range."  Together, the two test results put A.Z. in the "well above average risk."  His PCL-R score, which measures "psychopathic features," was twenty-eight, which the doctor described as a "pretty high" risk of "general violence."  Dr. DeCrisce diagnosed A.Z. as having "coercive paraphilia" and "antisocial personality disorder," such that he "would have serious difficulty controlling his sexual offending behavior if released."  The doctor opined that A.Z. is "highly likely" to reoffend.

Although psychologist Justyna Dmowski, Psy.D., was present at the hearing, her report was admitted by stipulation without testimony.  She is a

---

[1] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses."  In re Civil Commitment of R.F., 217 N.J. 152, 164 n.9 (2014).

[2] The Stable-2007 is an actuarial instrument used to assess dynamic risk factors that can change over time.  Kevin Baldwin, Sex Offender Risk Assessment, Sex Offender Management Assessment and Planning Initiative 2-4 (July 2015), https://www.smart.gov/pdfs/SexOffenderRiskAssessment.pdf.

member of the treatment progress review committee (TPRC), which recommended that A.Z. remain at his current level of treatment. She also gave A.Z. a five on the Static-99R but scored him at a somewhat higher risk level than Dr. DeCrisce on the Stable-2007. Dr. Dmowski also concluded A.Z. is "highly likely" to sexually reoffend.

A.Z. testified briefly on his own behalf, denying his guilt of the crimes for which he had entered guilty pleas.

The judge concluded by clear and convincing evidence that A.Z. suffered from a mental abnormality and personality disorder, and was "highly likely to sexually reoffend" if released.

A.Z. raises the following issue on appeal:

> THE ORDER SUBJECTING A.Z. TO CONTINUED [SVPA] COMMITMENT MUST BE REVERSED BECAUSE THE STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT A.Z. IS "HIGHLY LIKELY" TO REOFFEND.

An order of continued commitment under the SVPA, like an initial order, must be based on "clear and convincing evidence that an individual who has been convicted of a sexually violent offense, suffers from a mental abnormality or personality disorder, and presently has serious difficulty controlling harmful sexually violent behavior such that it is highly likely the individual will re-

4

offend" if not committed to the STU. In re Commitment of G.G.N., 372 N.J. Super. 42, 46-47 (App. Div. 2004). N.J.S.A. 30:4-27.26 defines a "[m]ental abnormality" as "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." The mental abnormality or personality disorder "must affect an individual's ability to control his or her sexually harmful conduct." In re Commitment of W.Z., 173 N.J. 109, 127 (2002).

"'Likely to engage in acts of sexual violence' means the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others." N.J.S.A. 30:4-27.26. At the SVPA commitment hearing, "the State must prove that threat by demonstrating that the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." W.Z., 173 N.J. at 132.

After an initial commitment, "an individual should be released when a court is convinced that he or she will not have serious difficulty controlling sexually violent behavior and will be highly likely to comply with [a] plan for safe reintegration into the community." Id. at 130. N.J.S.A. 30:4-27.32(c)(1) allows a court to "find a committee 'not likely' to engage in acts of sexual

violence, and authorizes conditional release of such a person upon a finding that 'the person is amenable to and <u>highly likely to comply</u> with a plan to facilitate the person's adjustment and reintegration into the community.'" <u>Ibid.</u> (quoting N.J.S.A. 30:4-27.32(c)(1)).

Our scope of review of a judgment for commitment under the SVPA "is extremely narrow." <u>R.F.</u>, 217 N.J. at 174 (quoting <u>In re D.C.</u>, 146 N.J. 31, 58 (1996)). We must "give deference to the findings of our trial judges because they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" <u>Ibid.</u> (quoting <u>State v. Johnson,</u> 42 N.J. 146, 161 (1964)). Moreover, "[t]he judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" <u>Ibid.</u> (quoting <u>In re Civil Commitment of T.J.N.</u>, 390 N.J. Super. 218, 226 (App. Div. 2007)). Thus, "[s]o long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." <u>Ibid.</u> (quoting <u>Johnson</u>, 42 N.J. at 162).

A.Z. argues that because Dr. DeCrisce found that his test scores reflected a twenty to thirty percent likelihood of sexually reoffending within five years, the State presented insufficient evidence of a high likelihood of reoffending. The doctor, however, testified that the tests cannot be used as a statistical

prediction when applied to a specific individual. A statistical quantification is not required under the SVPA. See In re Civil Commitment of A.Y., 458 N.J. Super. 147, 170-172 (App. Div. 2019). "[I]t is [not] realistic to impose requirements of proof of some statistical differentiation of the risk of reoffense." Doe v. Poritz, 142 N.J. 1, 33 (1995).

Applying our limited standard of review, we affirm the judge's order continuing A.Z.'s commitment. The judge's conclusions are amply supported by the evidence presented at the review hearing, and consistent with the law governing SVPA proceedings. From our careful review of the record, we are satisfied that the judge appropriately determined by clear and convincing evidence that A.Z. was highly likely to sexually reoffend.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3518-18T5